UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL NO. 06-225 (RMC) |
| | : | |
| v. | : | <u>VIOLATIONS</u> |
| | : | |
| BILLY W. KING | : | 18 U.S.C. Section 2314 |
| | : | (Interstate Transportation |
| Defendant. | : | of Stolen Property) |
| | : | 18 U.S.C. Section 2 |
| | : | (Causing an Act to be Done) |

**FILED**
OCT 1 0 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## STATEMENT OF OFFENSE

I, **BILLY W. KING**, submit the following Statement of Offense in support of my plea in of guilty in the above-captioned matter. I hereby knowingly, intelligently and voluntarily admit to the facts stated herein as true and accurate and that they form the basis for my plea in this case:

1. I worked as an attorney for the D.C. Office of Campaign Finance from approximately 1978 through approximately 1993. During that time, I served as the agency's General Counsel for approximately ten years.

2. I have worked as a Labor Advisor for the D.C. Department of Human Services from approximately 1993 to the present.

3. I was an attorney admitted to practice law in the District of Columbia during the period from January 1, 2000 through December 31, 2001.

4. During that period, I practiced law through my own law firm, the Law Offices of Billy W. King, located at 4014 Georgia Avenue. N.W., Washington, D.C. 20011.

5. During that period, in my law practice, I represented individuals who claimed to have suffered injury as plaintiffs in tort actions.

6. In my law practice, and consistent with the practice among tort lawyers, I often received compensation in the form of a "contingency fee," or a percentage of the amount of money for which I settled a case or which I recovered for my client at trial. My typical "contingency fee" was one third of the amount of money recovered in the case. I would retain that portion of any settlement and pay the remaining amount to the client or for any expenses related to the litigation.

7. I represented multiple clients in different tort actions at the same time.

8. After being retained as the attorney for a client in a particular case, I would often, personally or through a representative of my law firm, notify the defendant or the defendant's insurance company that I represented the individual as the plaintiff in the matter.

9. The defendant in many of my tort cases, where I represented the plaintiff, had insurance coverage. In such cases, the insurance company would typically be responsible for providing the defendant with defense counsel, negotiating a settlement or paying any settlement or judgment won at trial against the defendant.

10. Where a defendant in one of my cases was represented by an insurance company, I, or a representative of my law firm, would negotiate directly with the insurance company and its representatives, or insurance adjusters, to try to settle the case.

11. Where I or my law firm settled a case with an insurance company, the insurance company would often pay the settlement by sending a settlement check by U.S. mail across state

lines to me and my client. The settlement check would be made payable to both me as the attorney, BILLY W. KING, and to the client, with both listed as payees on the check.

12.   Where an insurance company settled a case with me or my law firm, and sent a settlement check to me or my law firm, the insurance company expected that I would notify my client to get permission before settling the case, would notify my client that I or my law firm had received the settlement check from the insurance company, would obtain my client's approval, signature and endorsement on the settlement check before depositing it in a bank and would pay my client the amount they were owed under the settlement from the funds provided in the settlement check.

13.   From 1998 through 2001, I, directly or by causing a representative of my law firm to do so, in the District of Columbia and elsewhere, knowingly engaged in a scheme and artifice to defraud, by settling cases in which I represented clients as an attorney without my client's permission and by causing settlement checks in amounts greater than $5,000, in those cases to be sent across state lines from insurance companies in other states to my law offices located in the District of Columbia and by then forging the client's signatures on the checks, depositing the checks into my law firm checking account and failing to pay my client the money they were due under the settlement.

14.   On or about June 2000, I sent a letter of representation to Allstate Insurance Company informing them that, as an attorney, I represented three claimants in a civil tort action - Carol Perry and her daughters, Raynada Perry and Doris Perry.

15. On or about September 29, 2000, I, or a representative of my law firm, negotiated a settlement with Allstate Insurance Company on behalf of the three Perry family members without their consent. The total amount of the settlement was $17,100 which was split between the three Perry family members. The individual settlement amounts made payable to both me and my clients were, respectively, $4,600 in settlement for Doris Perry, $5,000 for Raynada Perry and $7,500 for Carol Perry.

16. As a result, on or about September 29, 2000, Allstate Insurance Company sent three separate settlement checks to me and my law firm in the amounts of $4,600 for Doris Perry, $5,000 for Raynada Perry and $7,500 for Carol Perry.

17. The settlement check in the amount of $4,600 for Doris Perry was made payable to both me, BILLY W. KING, as attorney, and my client, Doris Perry.

18. The settlement check in the amount of $5,000 for Raynada Perry was made payable to both me, BILLY W. KING, as attorney, and my client, Raynada Perry

19. The settlement check in the amount of $7,500 for Carol Perry was made payable to both me, BILLY W. KING, as attorney, and my client, Carol Perry.

20. I personally, or by directing another to do so, caused the three settlement checks for the Perry family members to be sent by U.S. Mail from Allstate Insurance Company in Columbia, Maryland to the Law Offices of Billy W. King in Washington, D.C.

21. On or about October 11, 2000, I, BILLY W. KING, forged or caused to be forged the signatures of Carol Perry, Doris Perry and Raynada Perry on each of their three settlement checks, endorsed or caused the endorsement of the checks to myself and deposited or caused the

checks to be deposited into my law firm checking account at the Industrial Bank of Washington in the District of Columbia. I likewise failed to seek the consent of the Perrys to settle their case, failed to notify them of the settlement, failed to notify them when my law firm or I received the settlement check and failed to pay my clients the settlement money due them from the settlement checks sent to me or my law firm by Allstate Insurance Company.

22.     In addition, on or about February 14, 2001, I sent a letter of representation to the insurance company, Crum & Forrester, notifying them that I represented a woman named Timica Scott-Kelly in a tort case against Marbury Plaza LLC as a result of injuries she allegedly sustained on July 30, 2000. On that day, Ms. Scott-Kelly alleged that she slipped and fell at Marbury Plaza, located at 2300 Good Hope Road, S.E., Washington, D.C., injuring her back, neck and shoulders. Ms. Scott-Kelly received treatment for her injuries at Back to Health Chiropractic Centers, located at 14346 Old Marlboro Pike, Upper Marlboro, Maryland.

23.     In or about April, 2001, I, or a representative of my law firm, negotiated with the insurance company, Crum & Forster, in an attempt to settle Ms. Scott-Kelly's case, making a demand for $55,000. During this negotiation, I, or a representative of my law firm, informed the insurance company, Crum & Forrester, that my client, Ms. Scott-Kelly, had received treatment from a chiropractor and had medical bills which had to be paid..

24.     On or about May 10, 2001, I settled the case on behalf of my client, Timica Scott-Kelly, with the insurance company Crum & Forrester, for $9,000 without the permission of my client, Ms. Scott-Kelly. As a result of this settlement, I and my law firm received a check from Crum & Forrester's office made payable to both me, BILLY W. KING, and my client, Ms.

Scott-Kelly and her husband Gary Kelly.

25. I personally, or by directing another to do so, caused the settlement check for Ms. Scott-Kelly's case, in the amount of $9,000, to be sent by U.S. mail from Crum & Forster's office in Pittsburgh, Pennsylvania to the Law Offices of Billy W. King located in Washington, D.C.

26. On or about May 21, 2001, I, BILLY W. KING, forged, or caused to be forged, the signature of Ms. Scott-Kelly and her husband on the settlement check and forged, or caused to be forged, the endorsement of the check over to me or my law firm. I then deposited the settlement check, or caused the check to be deposited, into my law firm checking account at the Industrial Bank of Washington in the District of Columbia.

27. I, BILLY W. KING, failed to obtain the approval of my client, Ms. Scott-Kelly, for the settlement, failed to immediately notify her of the settlement or my receipt of the $9,000 settlement check and failed to pay a medical bill on behalf of Ms. Kelly from the settlement check, but rather, kept the money for myself.

## ACKNOWLEDGEMENT OF DEFENDANT

I have read this Statement of Offense and have discussed it with my attorney, Michelle M. Peterson, Esq. I fully understand this agreement and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this agreement fully. I am pleading guilty because I am in fact guilty of the offense identified in this Statement of Offense.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this plea agreement. I am satisfied with the legal services provided by my attorney in

connection with this plea agreement and matters related to it.

Date: 10/10/06

_____
Billy W. King
Defendant

### ACKNOWLEDGMENT OF ATTORNEY

I have read each page of this Statement of Offense, reviewed them with my client, and discussed the provisions of the Plea Agreement with my client, fully. These pages accurately and completely set forth the entire Statement of Offense. I concur in my client's desire to plead guilty and to acknowledge the facts contained in this Statement of Offense and the corresponding Plea Agreement.

Date: 10/10/06

_____
Michelle M. Peterson
Counsel for Defendant Billy W. King